**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TAMMIE MILLS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>REJUVACARE, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Tammie Mills ("Plaintiff"), on behalf of herself and all others similarly situated, complains and alleges based upon, among other things, her investigation made by and through her attorneys as follows:

## NATURE OF THE ACTION

1. RejuvaCare LLC ("RejuvaCare") develops, distributes, markets, and sells transdermal wellness patches, which contain natural ingredients and are advertised as a simple and holistic alternative to prescription medications. Plaintiff's instant putative class action complaint concerns RejuvaCare's marketing and sale of its "Ozempatch" which is now called "TonePatch" although sometimes still referred to as "Ozempatch" in public marketing materials (collectively referred to as the "Ozempatches"). By misleadingly capitalizing on the well-renowned weight loss drug, "Ozempic," RejuvaCare falsely and deceptively misrepresents to consumers that its Ozempatches similarly contain "GLP-1" and provide the well-known benefits of weight loss, decreased appetite, lower blood sugar levels, and reduced cravings, when in fact, they do not contain any GLP-1 and thus, do not work as advertised.

2. GLP-1, or "glucagon-like peptide-1" is a natural gut hormone created in the body that is responsible for regulating blood sugar, slowing digestion processes, and reducing appetite. However, when this hormone becomes dysregulated, blood sugar levels become unmanageable and appetite centers become uncontrollable, leading to the onset of major metabolic diseases, like obesity and Type 2 diabetes—two of the most serious chronic diseases permeating the U.S. population.

3. As a result, FDA-approved prescription medications are routinely prescribed to treat these all-too-common conditions. GLP-1 receptor agonists, or synthetic forms of the GLP-1 hormone, mimic the same bodily processes as the innate GLP-1 hormone, albeit in a more effective manner with higher potency, making GLP-1 agonists an extremely effective weight loss tool.

4. The weight loss industry is a billion-dollar business boosted by skyrocketing sales of injectable GLP-1 weight loss medications, like Ozempic (semaglutide) and Mounjaro (tirzepatide), which have become popular household names. Supplement manufacturers like RejuvaCare have capitalized on this hype and the public's familiarity of Ozempic at the expense of unknowing consumers who are unsavvy to the nuances of how the natural GLP-1 hormone and its agonists do (and do not) work.

5. In lieu of these FDA-approved medications, RejuvaCare touts its Ozempatches as a natural supplement designed to support GLP-1 production, appetite control, and weight management. On the front label of the product packaging, RejuvaCare describes its Ozempatches as "Slimming Patches" and "Weight Loss Patches" that contain "100% Natural Ingredients" that "support[] weight loss & metabolism" and provide "Clinically Inspired Results." On its website and in publicly available marketing materials, RejuvaCare promises consumers that the Ozempatch "[f]eatures an advanced GLP-1 weight loss formula that naturally increases the amount

of calories your body burns per hour"; "regulates your body's natural GLP-1 production without side effects"; "makes it easier to burn fat"; and "reduces cravings and improves mood," just to name just a few representations.

6. However, RejuvaCare's advertising and marketing campaign is false, deceptive, and misleading because the Ozempatches do not contain any of the actual active GLP-1 hormone or a GLP-1 receptor agonist whatsoever, and thus, do not provide consumers with any of the advertised weight management benefits. In other words, RejuvaCare advertises and sells its Ozempatches under the false impression that they contain "GLP-1," when in fact, it is simply false. Instead, RejuvaCare's Ozempatches contain a variety of herbal extracts such as white peony, cinnamon, and ginger, which are plainly ineffective at providing the same benefits as the GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery, which is an ineffective, if not an impossible, delivery system for these ingredients.

7. RejuvaCare's strategy to create Ozempatches for sale in the supplement market is not accidental. Since approximately 2025, RejuvaCare, capitalizing on the public's heightened intrigue for these medications and possible natural alternatives, has developed, distributed, marketed, and sold the Ozempatches in the online marketplace, targeting health-conscious consumers who desire attaining the positive weight management benefits associated with the infamous weight loss drugs.

8. Growing consumer fascination and desire for holistic alternatives to synthetic drugs has spurred in light of several factors like limited access to healthcare, increased costs for filling prescription medications, and greater transparency of ongoing developments in scientific literature and clinical trials illustrating the dangerous side effects of long-term prescription drug use. Consumers purchase RejuvaCare's Ozempatches in hopes that they will receive the positive

attributes commonly associated with GLP-1 without any of the aforementioned obstacles, costs, or drawbacks. In reality, however, because the Ozempatches do not contain GLP-1 as advertised, consumers do not receive any of the promised health benefits.

9. Plaintiff and those similarly situated Class Members relied to their detriment on RejuvaCare's misrepresentations and false impression that the Ozempatches would work like Ozempic and similarly contained GLP-1 when deciding to purchase the patches. Plaintiff and Class Members would not have purchased the Ozempatches absent Defendant's misrepresentations regarding the composition and efficacy of the Ozempatches. As a result, Plaintiff and Class Members suffered monetary damages as a result of Defendant's false and misleading advertising.

## PARTIES

10. Plaintiff Tammie Mills is a citizen and resident of Evanston, Illinois.

11. Defendant RejuvaCare, LLC is a limited liability company with its principal place of business located at 30 N. Gould Street, Suite R, Sheridan, Wyoming 82801.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed classes is a citizen of a different state than RejuvaCare.

13. This Court has personal jurisdiction over RejuvaCare because it purposefully directed its activities in this District, committed the wrongful acts alleged herein in Illinois, regularly conducts business in this District, and has extensive contacts with this forum.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, and RejuvaCare regularly conducts business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Background of GLP-1 and its Role in Metabolic Diseases

15. GLP-1, or "glucagon-like peptide-1" is a hormone naturally produced in the small intestine that is primarily responsible for the body's regulation of blood sugar levels, but also aids in various weight management mechanisms, such as slowing digestion, curbing cravings, and controlling appetite.[1]

16. Specifically, when the body releases natural GLP-1 after eating, it communicates with several organs, including the brain to decrease feelings of hunger; the stomach to increase feelings of fullness by slowing gastric emptying; and the pancreas to release insulin and suppress glucagon secretion, which overall decreases blood sugar levels by moving glucose from the blood and into the cells for energy use.[2]

17. Since GLP-1 acts "as a food thermostat in your gut," when this hormone becomes dysregulated, blood sugar levels become unmanageable and appetite centers become uncontrollable, leading to the onset of major metabolic diseases, like obesity and Type 2 diabetes.[3]

---

[1] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

[2] GLP-1: The Naturally Produced Hormone, General Pharmacy Compounding, Wellness Works, September 4, 2024, available at https://www.pccarx.com/Blog/glp-1-the-naturally-produced-hormone.

[3] Sarah Williams, GLP-1s 101: What the science says about weight loss, side effects, safety, Stanford Medicine News Center, June 29, 2026, available at

18. Enter GLP-1 agonists, which are a class of pharmaceutical medications that mimic the body's natural GLP-1 hormone that "bind" to the body's GLP cell receptors to trigger the same effects and play the same role as the body's GLP-1 hormone.[4] Stated another way, prescription GLP-1 medications are heroized as "game changers in both obesity and diabetes management" given their unparalleled efficacy in slowing digestion, curbing appetite, and losing weight.[5]

19. For this reason, pharmaceutical companies sell FDA-approved prescription medications to treat these metabolic conditions, such as Ozempic (semaglutide) and Mounjaro (tirzepatide), which are injectable medications delivered subcutaneously (in fatty tissue under the skin) via needle and syringe,[6] and Wegovy (semaglutide), which is now also available in tablet form to be taken orally.[7]

20. A survey conducted by the Gallup National Health and Well-Being Index reports that U.S. adult usage of GLP-1 medications for weight loss has quadrupled since 2024—from 3% in 2024 to 11% in 2026.[8]

---

https://med.stanford.edu/news/insights/2026/06/glp1s-101-weight-loss-wegovy-ozempic-zepbound-side-effects-safe-use.html.

[4] GLP-1 Agonists, Cleveland Clinic, last updated on July 3, 2023, available at https://my.clevelandclinic.org/health/treatments/13901-glp-1-agonists.

[5] Jessica Migala, Can You Boost GLP-1 Naturally?, WebMD, medically reviewed by Neha Pathak, MD on July 26, 2024, available at https://www.webmd.com/obesity/features/natural-glp1-boosters.

[6] GLP-1 Agonists, Cleveland Clinic, last updated on July 3, 2023, available at https://my.clevelandclinic.org/health/treatments/13901-glp-1-agonists.

[7] How do I take Wegovy pill?, Wegovy, available at https://www.wegovy.com/obesity/starting-wegovy/starting-wegovy-pill.html.

[8] Dan Witters, In U.S., GLP-1 Usage Reaches New High, Gallup, July 7, 2026, available at https://news.gallup.com/poll/712157/glp-usage-reaches-new-high.aspx.

21. However, Americans today face many obstacles in attaining access to affordable health care and prescription medications. Polling reports illustrate that approximately 59% of U.S. adults are worried about being able to afford prescription medications, while approximately 43% of adults have failed to take their medication as prescribed due to costs, and have resorted to other cost-saving measures such as skipping doses and purchasing over-the-counter-drugs instead.[9]

22. Excessive costs are even more of a concern for GLP-1 medications, which can run consumers anywhere from $900 to $1,400 per month without insurance.[10]

23. It is no surprise, then, in a world where metabolic diseases like type 2 diabetes and obesity are prevalent amongst adults and children alike,[11] the appeal for affordable and accessible GLP-1 boosting products in the consumer marketplace soars.

24. As Dr. Melanie Jay, director of the NYU Langone Comprehensive Program on Obesity Research, has noted, consumers become "desperate" for effective weight loss medications and as demand for these drugs exponentially rises, "it creates openings for people to exploit that demand."[12] RejuvaCare is just one of those companies exploiting the craze of effective weight loss medications at the expense of unknowing consumers.

---

[9] Audrey Kearney, *et al.*, Public Opinion on Prescription Drugs and Their Prices, KFF, published March 31, 2026, available at https://www.kff.org/health-costs/public-opinion-on-prescription-drugs-and-their-prices/.

[10] Carley Prendergast, GLP-1 Costs: Semaglutide, Tirzepatide and Compounded GLP-1s Prices, Forbes, June 1, 2026, available at https://www.forbes.com/health/weight-loss/glp-1-costs/.

[11] Type 2 Diabetes, U.S. Centers for Disease Control and Prevention, May 15, 2024, available at https://www.cdc.gov/diabetes/about/about-type-2-diabetes.html; Adult Obesity Facts, U.S. Centers for Disease Control and Prevention, May 14, 2024, available at https://www.cdc.gov/obesity/adult-obesity-facts/?utm_source=openai.

[12] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

**B. RejuvaCare's Advertising and Marketing of the Ozempatches**

25. RejuvaCare's "Ozempatch"—which is misleading named to mimic the popular prescription weight loss drug, Ozempic—creates the inaccurate impression upon consumers that the Ozempatches similarly contain a GLP-1 receptor agonist and will work in a similar manner in providing the weight loss, appetite control, and metabolism benefits. Indeed, as an article in GlobalNewswire specifically reviewing RejuvaCare's Ozempatch and its ingredients noted: "***One of the most common points of confusion for consumers researching OzemPatches involves the use of GLP-1 terminology in marketing content.*** [13]

26. In flaunting its Ozempatches, RejuvaCare claims that "[a]fter years of research, our team of metabolic specialists discovered a unique combination of natural compounds that can reactive your body's GLP-1 production without dangerous injections or pills" and that its "advanced transdermal delivery system that bypasses your digestive system entirely, delivering these powerful compounds directly where they're needed."[14]

27. Upon information and belief, RejuvaCare began selling its Ozempatches on its official website, Rejuvacare.com, in 2025.

28. On the front and center of RejuvaCare's Ozempatches' product packaging, in the largest text most noticeable to consumers is the label "**OZEMPATCH**" in bolded black lettering contrasting against a white background.

---

[13] Rejuvacare Ozempatch Ingredients Examined: 2026 Verified Consumer Reports of Herbal Weight Loss Patch Formulation Claims, Global Newswire, January 10, 2026, available at https://finance.yahoo.com/news/rejuvacare-ozempatch-ingredients-examined-2026-122800981.html (emphasis added).

[14] https://www.rejuvacare.com/products/rejuvacare-ozempatches-copy (captured July 20, 2025) (last accessed September 18, 2026).




29. Underneath the prominent "**OZEMPATCH**" label in smaller, bolded green text within a green box is the description "Slimming Patches," and underneath that, various claims including that Ozempatch "Supports Weight Loss & Metabolism." The front label of the Ozempatch product package also displays an image of a woman wearing a patch on her abdomen while tugging her too-loose jeans.

30. RejuvaCare's website is replete with numerous false and misleading advertising claims creating the false impression that RejuvaCare's Ozempatch contains GLP-1. For example, on the Ozempatch product page of RejuvaCare's website, RejuvaCare prominently claims Ozempatch "[f]eatures an advanced GLP-1 weight loss formula that naturally increases the amount of calories your body burns per hour."[15]

[15] *Id.*

31. In the online product listing on RejuvaCare's website, RejuvaCare prominently states its Ozempatch "Regulates Your Body's Natural GLP-1 Production Without Side Effects"; "Makes It Easier to Burn Fat"; and "Reduces Cravings and Improves Mood."[16]

32. RejuvaCare's Frequently Asked Questions ("FAQ") claims that "Ozempatch uses advanced transdermal technology to deliver natural GLP-1 stimulating compounds directly through your skin" that "bypasses digestive breakdown, allowing maximum potency" with the result allegedly being that "your body naturally burns fat 24/7 without dangerous side effects."[17]

33. RejuvaCare's FAQ also promises that, with Ozempatch, "significant fat loss typically begins around week 2-3, with dramatic transformations by week 8-12."[18]

34. That RejuvaCare recently changed its Ozempatch label to "TonePatch" does not cure the deceptiveness, because Defendant makes the same material misrepresentations and claims regarding the patches' purported benefits and efficacy, which as explained below, are false and misleading, and is likely to cause consumers future harm.[19]

35. For instance, RejuvaCare's current online product page on its website states the TonePatch "activates GLP-1"; "helps support healthy appetite control"; and "supports balance for energy and metabolism."[20]

36. RejuvaCare also currently states there are "400,00+ Happy RejuvaCare Customers" and displays supposed consumer reviews that tout the alleged rapid weight loss benefits of

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] https://www.rejuvacare.com/products/tonepatch (last accessed September 18, 2026).

[20] *Id.*

Defendant's patches, including that "it helps speed up your metabolism and help you lose weight with natural remedies."[21]

37. Defendant's label representations and online advertisements collectively induce consumers like Plaintiff to believe that the Ozempatch contains GLP-1 as the key ingredient and will work as effectively as GLP-1 containing and/or GLP-1 receptor agonist medications to provide the advertised weight management benefits.

38. Unfortunately, however, Defendant's misleading representations that its Ozempatches contain "GLP-1" like Ozempic and will work as advertised is nothing but a sham because the herbal ingredients in the patches are not as effective as providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

39. Indeed, Defendant's ingredient list reveals that its Ozempatch does not in fact contain any GLP-1. Instead, the patches currently contain a variety of natural extracts such as ginger, green tea, and lotus leaf, to name a few.

40. Throughout the liability period defined below, Defendant has engaged in an advertising and marketing campaign that falsely represents to consumers that its Ozempatch actually contains GLP-1 and thus, provide the highly desired weight management, blood sugar control, and appetite suppressing benefits widely recognized and associated with the GLP-1 hormone or GLP-1 receptor agonist prescription medications like Ozempic.

41. As a result of this deception, Defendant sold numerous units of the Ozempatches through its website.

42. Plaintiff and Class Members have been, and will continue to be, deceived or misled by Defendant's deceptive advertising claims. Each Class Member purchased and used the

---

[21] *Id.*

Ozempatches during the liability period and in doing so, read and considered the advertising claims on the Ozempatches packaging, including the misleading product name, and marketing materials and based their decision to purchase the Ozempatches on the advertising claims. Defendant's advertising claim that the Ozempatches contained GLP-1 was not only a material factor, but the only factor in influencing Plaintiff's decision to purchase and use the Ozempatches.

43. Plaintiff and the Class Members would not have purchased the Ozempatches had they known that they did not contain any GLP-1, and thus, would not provide any of the weight management benefits associated with GLP-1 or Ozempic.

**C. RejuvaCare's Advertising Claims for the Ozempatches are False and Deceptive**

44. Despite this prominent marketing and advertising, and as many medical experts agree, RejuvaCare's Ozempatches do not contain any GLP-1 and do not support healthy weight management and appetite control as promised because its herbal ingredients are ineffective at providing the same benefits as the actual GLP-1 hormone or a GLP-1 receptor agonist via transdermal delivery.

45. Nicholas Messinger, M.D., clinical pharmacy manager in the weight and metabolism management program at Mount Sinai Health System in New York City, told HealthCentral that "GLP-1 patches are a scam. Companies are trying to profit off the popularity of these medications. But there are no FDA-approved patches that deliver semaglutide or tirzepatide. The only approved formulations are injections and the Wegovy pill."[22]

[22] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

46. When asked about the legitimacy of these GLP-1 supplements and their advertised claims, C. Michael White, head of department of pharmacy practice at the University of Connecticut, opined:

> "The marketing seems to suggest that you could get with these natural products, these natural ingredients, the same effect that you can get with GLP-1 agonists, which is simply not the case. And in that way, they are being misleading to people. Some don't even tell you what ingredients are in it at all. And in those products, somebody may actually believe that they are going to get semaglutide or they are going to get tirzepatide."[23]

47. Dr. Melanie Jay told TODAY.com that GLP-1 patches, like RejuvaCare's Ozempatches, are "not the answer" for weight loss because they don't contain actual GLP-1 medications, but only herbal extracts that ultimately lack standardization or seals of approval, creating unknown risks for consumers.[24]

48. Regarding the efficacy of GLP-1 patches for weight loss, Natasha Bhuyan, M.D., board-certified family physician, stated "[n]one of these supplements have any evidence that they can help with weight loss." She explained:

> A closer look at these products shows they often contain ingredients like B-vitamin complex, berberine, cinnamon extract, and L-glutamine. While these supplements have been studied for various potential health benefits, the evidence connecting them to meaningful weight loss—especially when delivered through a patch—is weak. "None of these supplements have any evidence that they can help with weight loss. There are small benefits to these supplements for different reasons." For example, B vitamins may help with energy if a person is deficient. She adds, "Another important factor to remember is that many benefits of these supplements

---

[23] Hannah Grabenstein, In the gray world of GLP-1 supplements online, health experts urge caution, PBS News, updated on September 3, 2025, available at https://www.pbs.org/newshour/health/what-to-know-before-you-buy-a-weight-loss-supplement-on-tiktok.

[24] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

> have been studied in the oral doses, but there are limited studies in patch formulations."[25]

49. Similarly, Dr. Alyssa Dominguez, endocrinologist at the University of Southern California's Keck School of Medicine, told Rolling Stone that the doses of the herbal ingredients used in these GLP-1 patches " are super off compared to anything that was in the research studies, like they were giving people 8,000 times the dose of what is in the patch."[26]

50. The Global Newswire article reviewing RejuvaCare's Ozempatch similarly explained:

> GLP-1 is a hormone associated with appetite regulation and insulin response and is the target of several FDA-approved prescription medications.
>
> According to public statements from the U.S. Food and Drug Administration, there are currently no FDA-approved GLP-1 patches available for consumer use. Prescription GLP-1 medications such as injectable semaglutide and tirzepatide have undergone extensive clinical trials and regulatory review and are only available by prescription.
>
> Herbal wellness patches are regulated differently. These products are classified as consumer wellness items or dietary supplement or related products, not as prescription drugs. As a result, they are not required to meet the same evidence standards or demonstrate pharmacological effects associated with prescription medications.
>
> Health experts have noted in published commentary that many botanical ingredients commonly found in wellness patches have primarily been studied in oral supplement form rather than through transdermal application. ***The distinction is important for consumers interpreting marketing claims that reference GLP-1 concepts without indicating drug equivalence***. [27]

---

[25] Dr. Patricia Varacallo, DO, Do GLP-1 Patches Work? An Expert Doctor Weighs In with the Verdict, The Healthy, A Reader's Digest Brand, August 13, 2025, available at https://www.thehealthy.com/weight-loss/do-glp-1-patches-work-an-expert-doctor-weighs-in-with-the-verdict/.

[26] Fortesa Latifi, Influencers Are Hawking 'GLP-1 Patches.' Do They Work?, Rolling Stone, August 9, 2025, available at https://www.rollingstone.com/culture/culture-features/glp1-patches-influencers-ozempic-1235403902/.

[27] Rejuvacare Ozempatch Ingredients Examined: 2026 Verified Consumer Reports of Herbal Weight Loss Patch Formulation Claims, Global Newswire, January 10, 2026, available at

51. Further, even if the Ozempatches contained actual GLP-1 medication (they do not), the transdermal patch would be an ineffective delivery system. Sheldon Markowitz, M.D., chief of endocrinology at Episcopal Health Services in New York City, explained to HealthCentral that the effective delivery of GLP-1 via transdermal patch is not just an ineffective system, but it's also "not possible": "Even if a GLP-1 patch had true GLP-1 medications, it's not possible to deliver this medication via that route. These molecules are too large to pass through the skin."[28]

52. C. Michael White echoed these shortcomings: "There are currently no GLP-1 medications that can be absorbed through the skin. The drugs have large molecules that make that very difficult, if not impossible."[29]

53. The GlobalNewswire article further explained the scientific limitations to the transdermal delivery of herbal ingredients versus pharmaceutical formulations:

> Scientific research shows that the skin acts as a strong barrier designed to prevent the entry of most external substances. Effective transdermal delivery of therapeutic compounds typically requires advanced pharmaceutical formulation techniques. These may include penetration enhancers, microneedle systems, or specialized encapsulation technologies developed through extensive research.
>
> Prescription transdermal patches, such as nicotine or hormone replacement patches, undergo years of development to achieve consistent and measurable delivery. **Herbal wellness patches containing botanical ingredients face different scientific challenges, and published research does not currently demonstrate reliable transdermal delivery of many plant compounds at therapeutic levels**.[30]

---

https://finance.yahoo.com/news/rejuvacare-ozempatch-ingredients-examined-2026-122800981.html (emphasis added).

[28] Kenrya Rankin, Do GLP-1 Patches Really Work?, HealthCentral, medically reviewed by Shira Eytan, M.D., updated April 14, 2026, available at https://www.healthcentral.com/condition/obesity/glp-1-patches.

[29] Do 'GLP-1 Patches' Work for Weight Loss? Doctors Warn About Trend, Today, September 19, 2025, available at https://www.today.com/health/diet-fitness/glp-1-patches-rcna232201.

[30] Rejuvacare Ozempatch Ingredients Examined: 2026 Verified Consumer Reports of Herbal Weight Loss Patch Formulation Claims, Global Newswire, January 10, 2026, available at

54. As illustrated above, whether RejuvaCare's Ozempatches contain "GLP-1" and whether they can provide the advertised health benefits can be determined with objective factual evidence.

55. The advertising and marketing of RejuvaCare's Ozempatches is in the name itself and is in a prominent place, front and center on the label of the products, demonstrates Defendant's awareness that this claim about the product's composition is material to consumers.

56. Defendant's deceptive representations are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decision.

57. Plaintiff and Class Members reasonably relied to their detriment on Defendant's misleading and deceptive representations.

58. In making the false, misleading, and deceptive representations described herein, Defendant knew and intended that consumers would purchase a product advertised as similarly to "Ozempic" and as containing "GLP-1" over comparable products that are not advertised as containing "GLP-1."

59. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations, Defendant injured Plaintiff and the Class Members in that the Classes:

a. Paid a sum of money for a product that was not what Defendant represented;

b. Were deprived of the benefit of the bargain because the Ozempatches they purchased were different from what Defendant warranted; and

---

https://finance.yahoo.com/news/rejuvacare-ozempatch-ingredients-examined-2026-122800981.html (emphasis added).

c. Were deprived of the benefit of the bargain because the Ozempatches they purchased had less value than what Defendant represented.

60. Had Defendant not made the false, misleading, and deceptive representations, Plaintiff and the Class Members would not have purchased the Ozempatches at all, or would have paid substantially less for them.

61. Consequently, Plaintiff and the Class Members have suffered an injury-in-fact and lost money or property as a result of Defendant's wrongful conduct.

**D. Plaintiff's Experience**

62. On approximately July 18, 2025, Plaintiff Tammie Mills purchased nine (9) packs of RejuvaCare's Ozempatches on Defendant's website.

63. Plaintiff read the front label of the Ozempatches' product packaging and RejuvaCare's website claims, including that the Ozempatches contained "an advanced GLP-1 weight loss formula" and would "regulate" GLP-1 production.

64. Plaintiff purchased the Ozempatches reasonably believing that she was receiving a transdermal patch that actually contained GLP-1 like Ozempic and its associated weight management benefits.

65. In making her purchase decision, Plaintiff reasonably relied on RejuvaCare's false and misleading misrepresentations that the Ozempatches did in fact contain GLP-1.

66. Had Plaintiff known that RejuvaCare's Ozempatches did not actually contain any GLP-1 or a GLP-1 receptor agonist, were ineffective, and would not work as advertised, she would not have purchased the Ozempatches or would have paid less for them.

**E. Online Consumer Complaints About RejuvaCare's Ozempatches**

67. RejuvaCare is well aware of widespread consumer dissatisfaction arising from RejuvaCare's false and misleading advertising of the Ozempatches.

68. Plaintiff's experience is far from being an outlier. Below is a sampling of the online consumer complaints concerning RejuvaCare's Ozempatches:

a. "Don't waste your time and money. The Ozempatch did not work for me" (Trustpilot);

b. "This was a total waste of time and money! I feel terrible that I didn't find the reviews before I spent my family's resources on these patches. I chose to purchase a full year of patches in order to get reduced pricing. What I got was a full year of wasted money…"(Trustpilot);

c. "Take my advice, DO NOT BUY. DO NOT WASTE YOUR MONEY" (Trustpilot);

d. "…The ozempatch does nothing. Do not waste your money…" (Trustpilot);

e. "Biggest scam company on the planet…Ozempatch is a scam." (Trustpilot);

**CLASS ACTION ALLEGATIONS**

69. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself and Classes of similarly situated persons defined as follows:

**Nationwide Class**:
All persons in the United States who, during the applicable statute of limitations, purchased RejuvaCare's Ozempatches.

**Illinois Subclass**:
All persons in Illinois who, during the applicable statute of limitations, purchased RejuvaCare's Ozempatches.

70. Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case and their

staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

71. **Numerosity (Rule 23(a)(1)).** The proposed Classes are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the identities of Class Members are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The proposed Classes are also sufficiently ascertainable because Defendant has the administrative capability, through its computer systems and other business records, to identify all members of the proposed Classes, and such contact information is otherwise not available to Plaintiff.

72. **Commonality (Rule 23(a)(2)).** The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class Members. Such common legal or factual questions include, but are not limited to:

a. Whether RejuvaCare's misconduct misled or had the tendency to mislead consumers;

b. Whether RejuvaCare engaged in unfair, fraudulent, and unlawful business practices;

c. Whether RejuvaCare engaged in deceptive acts or practices and false advertising under the laws asserted;

d. Whether RejuvaCare's conduct constitutes violations of the laws asserted;

e. Whether Plaintiff and the Classes were harmed by RejuvaCare's misrepresentations;

f. Whether RejuvaCare was unjustly enriched;

g. Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages;

h. Whether Plaintiff and the Classes are entitled to injunctive, declaratory relief, or other equitable relief; and

i. Whether Plaintiff and the Classes are entitled to reasonable attorneys' fees and costs.

73. **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other Class Members in that they arise out of the same wrongful business practice by Defendant, as described herein.

74. **Adequacy of Representation (Rule 23(a)(4)).** Plaintiff is more than an adequate representative of the proposed Classes in that she has suffered damages because of Defendant's improper business practices. Additionally:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b. There is no conflict of interest between Plaintiff and the unnamed Class Members;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

75. **Predominance & Superiority (Rule 23(b)(3)).** Common questions of fact or law concerning Defendant's liability to all Class Members predominate over any questions affecting

only individual Class Members. Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class Members' individual claims before the Court, especially where, as here, individual Class Members' damages are relatively small. Class treatment permits many similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

76. **Final Declaratory or Injunctive Relief (Rule 23(b)(2)).** Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

77. **Particular Issues (Rule 23(c)(4)).** Plaintiff satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims consist of particular issues that are common to all members of the Classes and are capable of class-wide resolution that will significantly advance the litigation.

## FIRST CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS §§ 505, *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

78. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

79. RejuvaCare is a "person" as defined by 815 ILCS § 505/1(c).

80. Plaintiff and Class Members are "consumers" as defined by 815 ILCS § 505/1(e).

81. RejuvaCare's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). RejuvaCare's conduct is described in full detail above.

82. RejuvaCare engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in violation of 815 ILCS § 505/2.

83. RejuvaCare's representations and omissions were material because they were likely to deceive reasonable consumers.

84. RejuvaCare intended to mislead Plaintiff and Class Members and induce them to rely on its misrepresentations and omissions.

85. The above unfair and deceptive practices and acts by RejuvaCare were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

86. RejuvaCare acted intentionally, knowingly, and maliciously to violate Illinois' Consumer Fraud Act, and recklessly disregarded Plaintiff's and Class Members' rights. RejuvaCare's knowledge that the Ozempatches did not contain GLP-1 or any GLP-1 agonist as prominently advertised put it on notice that the Ozempatches were not as it advertised.

87. As a direct and proximate result of RejuvaCare's unfair, unlawful, and deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, loss of use, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Ozempatches.

88. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and reasonable attorneys' fees and costs.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of the Illinois Uniform Deceptive Trade Practices Act**
**815 ILCS §§ 510/01, *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

89. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

90. RejuvaCare is a "person" as defined by 815 ILCS § 510/1(5).

91. RejuvaCare engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS § 510/2(a), including:

a. Representing that goods have characteristics that they do not have (a)(5);

b. Representing that goods are of a particular standard, quality, or grade if they are of another (a)(7);

c. Advertising goods with intent not to sell them as advertised (a)(9); and

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding (a)(12).

92. RejuvaCare's representations and omissions were material because they were likely to deceive reasonable consumers.

93. The above unfair and deceptive practices and acts by RejuvaCare were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Class

Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

94. As a direct and proximate result of RejuvaCare's unfair, unlawful and deceptive trade practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, loss of use, and monetary and non-monetary damages including from not receiving the benefit of the bargain in purchasing the Ozempatches.

95. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

96. Plaintiff alleges and incorporates the allegations of the paragraphs above of this Complaint as if fully set forth herein.

97. To the detriment of Plaintiff and the Nationwide Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

98. Plaintiff and the Nationwide Class conferred a benefit on Defendant in the form of payment for the Ozempatches.

99. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

100. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

101. Plaintiff and the Nationwide Class, therefore, seek disgorgement of all wrongfully obtained money received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes, seek judgment in an amount to be determined at trial as follows:

a. Certifying the proposed Class(es), appointing Plaintiff as representative of the Class(es), and appointing Plaintiff's counsel as class counsel for the proposed Class(es);

b. Declaring Defendant's misconduct alleged herein to be unlawful;

c. Enjoining Defendant from the wrongful conduct as described herein on behalf of the general public;

d. Awarding actual damages and statutory damages in an amount according to proof;

e. Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices set forth above;

f. Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

g. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs of suit; and

h. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand a jury trial on all issues in this Complaint that are so triable as a matter of right.

Dated: September 22, 2026

Respectfully submitted,

**KALIELGOLD PLLC**

By: */s/ Jeffrey D. Kaliel.*
Jeffrey D. Kaliel (IL Bar No. 6334091)
jkaliel@kalielpllc.com
Amanda J. Rosenberg (IL Bar No. 6315494)
arosenberg@kalielgold.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783

Sophia G. Gold
**pro hac vice forthcoming*
sgold@kalielgold.com
490 43rd Street, Suite 122
Oakland, CA 94609
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Putative Classes*